**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**
Case No.: _____

COURTHOUSE NEWS SERVICE,

                        Plaintiff,

       v.

RYAN BOYCE, in his official capacity as
Director of the North Carolina Administrative
Office of the Courts; MICHELLE BALL,
in her official capacity as Clerk of Superior
Court of Johnston County; RENEE
WHITTENTON, in her official capacity as
Clerk of Superior Court of Harnett County;
and BLAIR WILLIAMS, in his official
capacity as Clerk of Superior Court of Wake
County,

                     Defendants.

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

Plaintiff Courthouse News Service ("Courthouse News"), by and through its undersigned attorneys, alleges as follows against (1) Ryan Boyce, in his official capacity as Director of the North Carolina Administrative Office of the Courts ("NCAOC" and "Director Boyce"); (2) Michelle Ball, in her official capacity as Clerk of Superior Court of Johnston County ("Clerk Ball"); (3) Renee Whittenton, in her official capacity as Clerk of Superior Court of Harnett County ("Clerk Whittenton"); and (4) Blair Williams, in his official capacity as Clerk of Superior Court of Wake County ("Clerk Williams," and with Director Boyce, Clerk Ball, and Clerk Whittenton, "Defendants"):

**INTRODUCTION & ACCESS BACKGROUND**

1.       Courthouse News is a nationwide news media outlet that, among other things, reports on newsworthy civil filings throughout our nation's state and federal court systems. Its

ability to report news in a manner that has value for its readers hinges upon quick access to court records. On-receipt access to civil complaints is particularly important because a complaint is the initiating document in a case. When newsworthy cases "break," case information is contained in the complaint. The automatic delays in access to civil complaints, described herein, deprive the public of such "breaking news." Courthouse News brings this lawsuit because Defendants' recent adoption of computer technology to manage the filing and service of court documents, ironically, results in the withholding of newly filed complaints, causing delays in public access to court records, in violation of the First Amendment to the United States Constitution.

2.     Since time beyond memory, the press has reviewed new civil complaints when they crossed the intake counter in American courts. That tradition was perhaps best described by Eighth Circuit Judge Bobby Shepherd in 2022 oral arguments in a case involving the same issues: "There was a time when – and some in this room may remember it – when you took a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately."

3.     Civil disputes can make big news. Recent examples include the dispute between Fox News and Dominion Voting arising out of voter fraud claims in the 2020 presidential election, and the high-profile legal battles in both state and federal court between Walt Disney and Florida Governor Ron DeSantis. These cases have generated significant national news interest.

4.     Less publicized civil disputes generate news at the local level. Readers can find a wide variety of new actions newsworthy for many reasons – the parties or attorneys

involved, the nature of the suit, the issued involved, or the factual allegations. New civil complaints have been and continue to be a rich source of news.

5.      During the transition from paper to electronic court records, federal courts and many state courts kept in place the age-old tradition of access. But some state court clerks and administrators abandoned it. They withheld new electronically filed ("e-filed") complaints until the complaints were later entered into the public case docket, delaying access and damaging the news. That group includes NCAOC, which oversees and maintains the recently implemented statewide e-filing and case management system, for which rollout has begun across North Carolina's state courts. The rollout began with four Clerks of Court, including the three sued here, who are the first in North Carolina to implement the new e-filing system.

6.      On February 13, 2023, the Superior Courts in Wake, Johnston, Harnett, and Lee counties launched their mandatory e-filing programs. Relatively soon, this e-filing mandate will apply across all North Carolina state courts. Mecklenburg County, North Carolina's largest county by population, is currently anticipated to debut mandatory e-filing some time in 2023. According to the North Carolina Judicial Branch's website, all 100 counties in North Carolina are currently expected to go live with mandatory e-filing by the end of 2024.[1]

7.      E-filings are made through a single online site that is managed and maintained by NCAOC, known as eFile North Carolina.[2]

---

[1] *See* eCourts, *available at*: https://www.nccourts.gov/ecourts#timeline-9422 (last visited May 23, 2023).

[2] *See* eFile North Carolina, *available at*: https://efilenc.tylertech.cloud/OfsEfsp/ui/landing (last visited May 23, 2023).

8.	eFile North Carolina runs on a software platform called eFile & Serve. In June 2019, NCAOC contracted with Tyler Technologies, Inc. ("Tyler") to license a suite of software applications including eFile & Serve. NCAOC and Tyler are the parties to the contract.

9.	In 2019, after learning that Tyler's eFile & Serve software was selected to provide the e-filing engine for North Carolina, Courthouse News requested NCAOC implement Tyler's Press Review Tool ("PRT," also referred to as a Press Review Queue) for access to newly filed civil complaints. A copy of that correspondence is attached as **Exhibit A**. The PRT provides access to new complaints once they are received by the E-File Manager ("EFM"), which is the storehouse for complaints submitted through North Carolina's e-filing system. The complaint as submitted by the filer resides in this EFM document repository. The PRT permits the press and public merely to view complaints in the EFM after they have been received from the filer. Clerks perform their work through a similar application, called the Clerk Review Queue. There, clerks review a copy of each complaint held in the EFM, perform a series of administrative steps called "processing," and add it to the case management system (the docket), as their schedules permit. Only then can the press and public see new complaints. The PRT would mimic traditional public access to new civil complaints, *i.e.*, access on receipt.

10.	This request for a PRT was in practical effect tabled by an NCAOC committee and never revisited despite the demonstrated ability of the eFile & Serve software platform to easily provide a PRT for traditional, on-receipt access in an electronic environment. The PRT works very much like the traditional box on the clerk's intake counter that historically held new paper-filed complaints for public view.

4

11.     The PRT is readily available to any court clerk or administrator who requests it from Tyler. Tyler has installed the PRT for other courts operating the eFile & Serve software platform used by Defendants.

12.     The PRT is not the only alternative available to Defendants for satisfying their constitutional access obligations.[3] Tyler also offers "Auto-Accept Review" which allows eFile & Serve courts to automatically place new complaints into the public case docket and process them afterwards. This Court and most federal courts use this type of system. Tyler also offers an Application Programming Interface ("API") that allows eFile & Serve courts to program software independently to provide press and public access on receipt.

13.     Using a panoply of e-file software vendors and home-grown software, the following states provide traditional access on receipt, either remotely or at the courthouse, when new e-filed complaints cross the digital counter: Alabama (statewide), Arizona (statewide), California (all e-filing counties, which cover 85% of the state's population), Connecticut (statewide), Florida (statewide), Georgia (in Atlanta metropolitan area), Hawaii (statewide), Nevada (Clark County/Las Vegas), New York (statewide), Texas (Austin), Utah (statewide), and Vermont (statewide). In addition, the federal courts, including this Court, provide access to new civil complaints when they are received.

14.     Defendants could use one of the alternatives offered by its vendor as a means of providing access to new civil complaints filed through eFile North Carolina, but Defendants instead enforce a "no-access-before-processing" policy, which keeps the existence of new lawsuits secret until they choose to disclose them.

_____

[3] *See* Tyler presentation, *available at:*
https://www.efiletexas.gov/documents/eFileTexas%20PRT%20vs.%20Auto-Accept.pdf (last visited May 23, 2023).

15.     As a result of this policy, Defendants withhold e-filed civil complaints from the press and public until after they have been "processed" by staff, effectively sealing them during processing, resulting in delayed access. This "no-access-before-processing" policy will likely only spread as e-filing becomes mandatory across North Carolina. If left to stand, it will result in the ongoing denial of the press' and public's qualified First Amendment right of on-receipt access to civil complaints.

16.     Since implementation of eFile North Carolina, Courthouse News has experienced substantial and continuous delays in obtaining access to newly e-filed civil complaints, with about half withheld between one to three days — or more.

17.     Once e-filing implementation began, Courthouse News individually contacted Director Boyce, Clerk Ball, Clerk Whittenton, and Clerk Williams, requesting on-receipt access to newly filed civil complaints to no avail.

18.     Courthouse News brings this action under the First Amendment of the United States Constitution to address constitutional wrongs, seek declaratory and injunctive relief, and challenge Defendants' policy and practice of withholding public and press access to newly filed civil complaints e-filed through the eFile North Carolina portal, which operates under the supervision and control of NCAOC and on behalf of Clerks of Court including Clerks Ball, Whittendon, and Williams. That system is not only for e-filing court documents but is also the only mechanism for public access to court records in e-filing counties. Access is withheld until after administrative processing occurs at the county level.

## PARTIES

19.     Courthouse News is a nationwide news service founded almost 30 years ago out of a belief that a great deal of news about civil litigation went unreported by traditional news media, a trend that has only increased in the last decade. Courthouse News now employs

approximately 240 people, most of them editors and reporters, covering state and federal trial and appellate courts in all 50 states in the United States.

20. Defendant Ryan Boyce is the Director of the North Carolina Administrative Office of the Courts and is named as a defendant solely in his official capacity. Director Boyce is responsible for, among other things, the administration of eFile North Carolina, and for public access to all court records passing through that system, including through any systems licensed from or otherwise provided by third parties, such as Tyler.

21. Director Boyce and those acting under his direction and supervision are directly involved with and/or responsible for the withholding of access to newly filed civil complaints experienced by Courthouse News and other members of the press and public. These acts reflect the official policies and practices of Director Boyce's office. Courthouse News seeks relief against Director Boyce as well as his agents, assistants, successors, employees, and all persons acting in concert or cooperation with him or at his direction or under his control.

22. Michelle Ball is the Clerk of the Johnston County Superior Court and is named as a defendant solely in her official capacity. Clerk Ball is responsible for, among other things, the administration of eFile North Carolina in Johnston County, and for public access to Johnston County court records through that system, including through any systems licensed from or otherwise provided by third parties, such as Tyler.

23. Clerk Ball and those acting under her direction and supervision are directly involved with and/or responsible for the withholding of access to newly filed civil complaints experienced by Courthouse News and other members of the press and public in Johnston County. These acts reflect the official policies and practices of Clerk Ball's office. Courthouse News

7

seeks relief against Clerk Ball as well as her agents, assistants, successors, employees, and all persons acting in concert or cooperation with her or at her direction or under her control.

24.    Renee Whittenton is the Clerk of the Harnett County Superior Court and is named as a defendant solely in her official capacity. Clerk Whittenton is responsible for, among other things, the administration of eFile North Carolina in Harnett County, and for public access to Harnett County court records through that system, including through any systems licensed from or otherwise provided by third parties, such as Tyler.

25.    Clerk Whittenton and those acting under her direction and supervision are directly involved with and/or responsible for the withholding of access to newly filed civil complaints experienced by Courthouse News and other members of the press and public in Harnett County. These acts reflect the official policies and practices of Clerk Whittenton's office. Courthouse News seeks relief against Clerk Whittenton as well as her agents, assistants, successors, employees, and all persons acting in concert or cooperation with her or at her direction or under her control.

26.    Blair Williams is the Clerk of the Wake County Superior Court and is named as a defendant solely in his official capacity. Clerk Williams is responsible for, among other things, the administration of eFile North Carolina in Wake County, and for public access to Wake County court records through that system, including through any systems licensed from or otherwise provided by third parties, such as Tyler.

27.    Clerk Williams and those acting under his direction and supervision are directly involved with and/or responsible for the withholding of access to newly filed civil complaints experienced by Courthouse News and other members of the press and public in Wake County. These acts reflect the official policies and practices of Clerk Williams' office. Courthouse News

8

seeks relief against Clerk Williams as well as his agents, assistants, successors, employees, and all persons acting in concert or cooperation with his or at his direction or under his control.

28.     Defendants' actions, as alleged in this Complaint, are under the color of state law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

## JURISDICTION & VENUE

29.     Courthouse News' claims arise under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act, Title 42 U.S.C. § 1983, *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 (declaratory relief). Defendants are subject to personal jurisdiction in this District.

30.     Venue is proper in this District under 28 U.S.C. § 1391(b), and in this Division, because a substantial part of the events or omissions giving rise to Courthouse News' claims occurred in this District and in this Division. The First Amendment violations giving rise to this action took place in this District and in this Division. Defendants are all located within this District and Division as well.

## FACTS

### Courthouse News' Reporting Activities

31.     Courthouse News offers its readers a variety of publications. Courthouse News publishes a free website, www.courthousenews.com, featuring news reports and commentary read by roughly 30,000 people every weekday. The website functions like a daily newspaper, featuring staff-written articles from across the nation, posted throughout each day and rotated off the page on a 24-hour news cycle. On a subscription basis, Courthouse News publishes the *Daily Brief* covering opinions from all state and federal courts as well as significant rulings from

federal district courts. Also on a subscription basis, Courthouse News publishes *New Litigation Reports* containing original, staff-written summaries of significant new civil complaints, sent to subscribers via e-mail each evening.

32.     Courthouse News has been credited as the original source of reporting on various topics by a wide range of publications, such as: *ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR); NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, POLITICO, *Rolling Stone*, *Salt Lake City Tribune, San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*, United Press International (UPI), *USA TODAY*, *U.S. News & World Report,* and the YouTube news channel. American, Canadian, and New Zealand radio shows have also interviewed Courthouse News reporters.

33.     Courthouse News has more than 2,200 subscribers nationwide, including law firms, law schools, government offices, and news outlets such as: The Associated Press, *Austin American-Statesman, The Atlanta Journal-Constitution*, *The Boston Globe*, CNN, *The Dallas Morning News*, *Detroit Free Press*, Fox Entertainment Group, *Honolulu Civil Beat,* International Consortium of Investigative Journalists, *Las Vegas Review-Journal, Los Angeles Business Journal, Los Angeles Times*, North Jersey Media Group, *Pacific Coast Business Times, Portland Business Journal, St. Paul Business Journal, The Salt Lake Tribune, The San Jose Mercury*

*News, San Antonio Express-News*, *Tampa Bay Business Journal*, *The Wall Street Journal*, Walt Disney Company, and Warner Bros.

34.     Courthouse News' academic subscribers include Boston University, Columbia Journalism Investigations, Drake University Law Library, MIT School of Management, Stanford University, University of Chicago, University of Maryland College of Journalism, University of North Carolina at Chapel Hill, University of Virginia School of Law, and Wake Forest University.

35.     The *New Litigation Reports* published by Courthouse News that cover North Carolina courts include the *Triangle Area Report*, the *Charlotte Report* (which includes Mecklenburg County)*,* and the *Greater North Carolina Report*. These publications cover civil complaints, focusing on actions brought against business institutions and public entities. Courthouse News reporters do not cover family law matters, name changes, probate filings, most mortgage foreclosures, or collection actions against individuals unless the individual is well-known or otherwise notable. Collectively, these reports cover state superior courts (as well as federal courts) in North Carolina, and they are emailed to subscribers weekday evenings.

36.     Courthouse News does not seek to review or report on the small number of new civil complaints that are statutorily confidential or accompanied by a motion to seal for a judicial determination of whether the complaint should be confidential. Such complaints are screened from public access by the e-File & Serve software.

37.     The *Triangle Area Report* covers civil actions filed in the U.S. District Court for the Eastern District of North Carolina, and in state superior courts for Alamance, Durham, Johnston, Nash, Orange, and Wake counties. It has 60 subscribing institutions that include major law firms.

38. The *Greater North Carolina Report* covers civil actions filed in state superior courts in 81 counties, including Harnett County. It has 45 subscribing institutions that include major law firms.

39. To prepare the *New Litigation Reports* and identify new cases that may warrant a website article, Courthouse News' reporters review complaints filed with their assigned courts to determine which are of interest to Courthouse News' readers. Given the nature of the coverage in the *New Litigation Reports* and its other news publications, including its website, any delay in the ability of a reporter to obtain and review new complaints necessarily holds up the reporting on legal controversies for readers.

40. In at least 2003, Courthouse News began reporting on new civil complaints filed in North Carolina when it started covering the federal and state superior courts in Mecklenburg County.

41. As noted above, NCAOC contracted to move North Carolina courts from paper to electronic filing in 2019. That same year, Courthouse News requested NCAOC implement a PRT similar to those operating in other states employing the same Tyler eFile & Serve software platform now used by Defendants called eFile North Carolina.

42. Upon information and belief, the remainder of North Carolina counties will also use this system when the statewide transition to e-filings is complete. Courthouse News' request, along with subsequent requests, never bore fruit, and Defendants continue to withhold new e-filed complaints past the point of filing until they have been processed, resulting in substantial and ongoing access delays. In fact, since the advent of e-filing, about half of the complaints filed in Harnett, Johnston, and Wake counties have, on average, been withheld from access a day or more.

43.     These delays have real and direct impact on Courthouse News' ability to timely report the news. Litigation in the e-filing counties of North Carolina is a rich mix of extraordinarily varied disputes involving harms to individuals and businesses. Many are of interest to local readers of local publications centered on local news, but they were in effect sealed the day they were filed. For example: (1) the producer of a local politics show *Front Row*, which allegedly was not renewed for "slipping farther and farther to the Right," sued PBS North Carolina under the state's public records law seeking documents involving the show; (2) parents filed a wrongful death action against the Greater Raleigh Merchants Association because a driver in their holiday parade lost control of his truck and killed their 11-year-old daughter; (3) a Raleigh resident filed a class action on behalf of current and former employees against Pepsi Bottling Ventures over a data breach; and (4) a fraud action was filed against a Wyoming business called Dragonfly Alliance for inducing plaintiff to invest $200,000.00 in a scheme involving a new "plasma technology" process to extract gold quickly so plaintiff could obtain 400 ounces of gold bars at extremely low cost. None of these cases was publicly available on receipt, delaying reporting.

### A First Amendment Right of Access
### Attaches to Civil Complaints Upon Receipt

44.     A qualified right of access grounded in the First Amendment applies to civil complaints.

45.     The analysis of a claim alleging a violation of the First Amendment right of access to court documents typically involves a two-step process. The first step is to determine whether, as a general matter, there is a First Amendment right of access to a particular court proceeding or document. If the answer to that question is "yes," the court proceeds to the second step, which is to determine if the restrictions on access to that court process or document satisfy

constitutional standards. *See, e.g., Courthouse News Serv. v. Schaefer,* 2 F.4th 318 (4th Cir. 2021); *Courthouse News Serv. v. Planet,* 947 F.3d at 581, 589-97 (9th Cir. 2020) ("*Planet III*") (discussing and applying two-step process established by *Press-Enterprise Co. v. Superior Court* ("*Press-Enterprise II*"), 478 U.S. 1 (1986)).

46.     The Fourth Circuit as well as other federal circuit and district courts have held that the First Amendment provides the press and public with a presumptive right of access to newly filed civil complaints contemporaneous with their filing. *Schaefer,* 2 F.4th at 328 (applying *Press-Enterprise II* analysis). And where this First Amendment right of access applies, it "requires courts to make newly filed civil complaints available as expeditiously as possible." *Schaefer*, 2 F.4th at 328-29.

47.     Turning to the second step, *Planet III* determined that the clerk had failed to "demonstrate … that there is a 'substantial probability' that its [asserted] interest[s]" to support withholding access to new civil complaints until after administrative processing "would be impaired by immediate access, and … that no reasonable alternatives exist to 'adequately protect' that government interest." *Id*. at 596 (citing and quoting *Press-Enterprise* II, 478 U.S. at 14). The clerk's policy of withholding access to new civil complaints until after administrative processing thus failed both prongs of the *Press-Enterprise II* test and violated Courthouse News' First Amendment right of timely access to new civil complaints. *See id*. at 596-600.

48.     On remand following *Planet III*, the District Court in the *Planet* case entered an Amended Judgment for Declaratory and Injunctive Relief reflecting the holding from Planet *III* that a qualified First Amended right of timely access attaches "when new complaints are received by a court, rather than after they are 'processed.'" *Courthouse News Serv. v. Planet*, 2021 WL 1605216, *1 (C.D. Cal. 2021) ("*Planet* Amended Judgment").

49.     As the Fourth Circuit put it in *Schaefer,* the clerks must carry their burden of establishing "unpreventable circumstances" justified the delays. *Schaefer,* 2 F.4th at 329. Moreover, any restrictions must be narrowly tailored. *Id.* at 328. Instead, the access delays in *Schaefer* "violated the First Amendment." *Id.* at 329.

**Defendants Cannot Justify Their Practice of Withholding Access to New Civil Complaints Until After Administrative Processing**

50.     Where, as here, the First Amendment right of access applies, it attaches contemporaneously upon receipt, and any restriction on access must be justified under constitutional standards. *Id.* at 328-329.

51.     Under *Press-Enterprise II,* once the access right attaches, defendants must establish "closure is essential to preserve higher values and is narrowly tailored to serve those interests." *Press-Enterprise II*, 478 U.S. at 13-14; *accord Planet III*, 947 F.3d at 596; *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016). Here, Defendants' policies do not preserve higher values and, even if they do, they are not narrowly tailored.

52.     The continuing denial of access to new complaints until administrative processing has occurred causes significant and continuous access delays to court records in Harnett, Johnston, and Wake County Superior Courts. Unlike federal district courts and many state courts, Defendants do not make newly filed complaints available upon receipt. Instead, they withhold complaints until after staff has administratively processed them. As a direct result, there are substantial and continuous delays between the e-filing of a new complaint and when it is made available to the press and public.

53.     Withholding access is unnecessary and easily avoidable, as demonstrated by the contemporaneous access provided by federal and state courts across the country using

alternatives that are readily available to Defendants, including implementing a PRT or auto-accept feature through Tyler's eFile & Serve software platform.

54.     Historically, reporters covering courts could review and report on newly filed, paper civil complaints on their receipt. This access generally occurred via a media box, bin, or cart available to the press regardless of whether the complaints had been docketed (or "processed" – the term now often used by courts).

55.     E-filing makes it even easier for courts to provide contemporaneous access to new complaints. Instead of basic intake work being done by clerks at an intake counter, that work is now done by filers through the e-filing software used to enter case information and whatever minimum submission requirements the court specifies before submitting their e-filings to the court. Based on the case designation supplied by the filer, the e-filing software can sort new complaints and automatically make them available to the press and public contemporaneously upon their receipt by the court.

56.     The vast majority of federal courts and many state courts configure their e-filing and case management systems to automatically allow access to civil complaints upon their receipt by the court. The systems that provide this access have been developed by at least ten different private and government software creators. These systems share one critical attribute: they provide access on receipt. Clerks conduct administrative tasks afterwards, as their schedules permit.

57.     Within that group of e-filing systems, Tyler has developed and licensed at least three alternative methods for providing press and public access on receipt. These three alternatives are: (1) automatic acceptance on receipt of new civil complaints into the public docket for the case ("Auto-Accept Review"); (2) the PRT, which also provides on-receipt access

to new civil complaints for viewing; and (3) an application programming interface, known as "API," that allows the courts to program a press review queue either themselves or through a contractor. Tyler has installed Auto-Accept Review in several courts, including Clark County Superior in Las Vegas, Nevada. It has developed and installed a PRT in four states: Georgia, Nevada, Texas, and Vermont. California courts have built their own version of the PRT through the API specifications provided by Tyler.

58.     In addition to its September 26, 2019, request to NCAOC, Courthouse News has made requests to all Defendants for pre-processing access to newly e-filed civil complaints. Defendants have not done so. Meanwhile, Courthouse News continues to experience delays in access to newly e-filed civil complaints because of Defendants' policies and practices of withholding access to them until after processing.

59.     On April 7, 2023, Courthouse News sent a letter to Director Boyce requesting that NCAOC provide on-receipt access to newly filed civil complaints without withholding access until after processing. Among other things, the letter also describes how the software platform provided by Tyler can achieve this access through a Press Review Queue option. A copy of that letter is attached as **Exhibit B**.

60.     On April 7, 2023, Courthouse News sent similar letters to Clerks Ball, Whittenton, and Williams requesting their offices provide on-receipt access to newly filed civil complaints without withholding access until after processing. Copies of those letters are attached as **Exhibits C**, **D**, and **E**, respectively.

61.     On May 5, 2023, Courthouse News received a response from the general counsel for the North Carolina Administrative Office of the Courts, Andrew Brown. The letter made no commitment to resolve the ongoing withholding of access nor offer to adopt one of the readily-

available alternatives provided by Tyler and implemented elsewhere. A copy of that letter is attached as **Exhibit F**.

62. On May 8, 2023, Courthouse News responded, explaining that the issues had been raised four years ago, that the continued lack of on-receipt access remained a problem and that Courthouse News was willing to listen to "any proposal you wish to bring forward that would remove the current restriction on access." A copy of that correspondence is attached as **Exhibit G**.

63. Defendants cannot satisfy their burden of justifying the withholding of access to newly e-filed civil complaints under constitutional scrutiny. *See Schaefer,* 2 F.4th at 328-29 (access right requires complaints to be made available as "expeditiously as possible," there was a lack of evidence of "unpreventable circumstances" justifying withholding the complaints, and any restrictions must be "narrowly tailored"). Defendants cannot constitutionally justify their policies and practices of sealing access to these complaints until after processing. Defendants also cannot establish that their policies and practices are narrowly tailored because their offices already possess or have access to one of many readily available alternatives capable of meeting courts' needs while at the same time providing on-receipt access to new e-filed complaints, *e.g.*, the Tyler Press Review Queue and auto-accept features.

## COUNT ONE

**Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983 as Against All Defendants**

64. Courthouse News incorporates the allegations of Paragraphs 1-63 herein.

65. Defendants' actions under color of state law, including without limitation their policies and practices of withholding newly filed civil complaints from press and public view until after administrative processing, and the resulting denial of contemporaneous access to new

civil complaints upon their receipt for filing, deprives Courthouse News, and by extension its readers, of their right of access to court records secured by the First Amendment.

66.     The presumption of access to new civil complaints, which arises when those complaints are filed in North Carolina courts, may be restricted only if closure is essential to preserve higher values and is narrowly tailored to serve those interests. *Planet III*, 947 F.3d at 594-95 (citing *Press-Enterprise II*). For Defendants' no-access-before-processing policy to "survive *Press-Enterprise II*'s two-prong balancing test," Defendants "must demonstrate that there is a 'substantial probability' that its [asserted] interest[s]… would be impaired by immediate access, and second, that no reasonable alternatives exist to 'adequately protect' that government interest." *Planet III*, 947 F.3d at 596. Defendants cannot satisfy this test. *See Schaefer,* 2 F.4th at 328-29.

67.     Courthouse News has no adequate remedy at law to prevent or redress Defendants' unconstitutional actions and will suffer irreparable harm as a result of Defendants' violation of its First Amendment rights. Courthouse News is therefore entitled to a declaratory judgment and a permanent injunction to prevent further deprivation of the First Amendment rights guaranteed to it and its subscribers.

## PRAYER FOR RELIEF

WHEREFORE, Courthouse News prays for judgment against Defendants as follows:

1.     A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Defendants' policies and practices that knowingly withhold access to newly filed civil complaints, including, inter alia, their policies and practices of denying access to complaints until after administrative processing, are unconstitutional under the First and Fourteenth Amendments to the United States Constitution because these

policies and practices constitute an effective denial of contemporaneous public access to new civil complaints, which are public court records to which the First Amendment right of access applies;

2.      A permanent injunction against all Defendants, including their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them, or at their direction or under their control, prohibiting them from continuing their policies and practices that deny Courthouse News contemporaneous access to new civil complaints, including, *inter alia*, their policies and practices of denying access to complaints until after administrative processing;

3.      An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

4.      All other relief the Court deems just and proper.

Dated: May 25, 2023

Respectfully submitted,

STEVENS MARTIN VAUGHN & TADYCH, PLLC

*/s/ Michael J. Tadych*
Michael J. Tadych
N.C. State Bar No. 24556
mike@smvt.com
Elizabeth J. Soja
N.C. State Bar. No. 36292
beth@smvt.com
6300 Creedmoor Road, Suite 170-370
Raleigh, NC 27612
Telephone: (919) 582-2300
Facsimile: (866) 593-7695

-and-

THOMAS & LOCICERO PL
Carol Jean LoCicero
Florida Bar No. 603030

Mark R. Caramanica
Florida Bar No. 110581
601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070
clocicero@tlolawfirm.com
mcaramanica@tlolawfirm.com
tgilley@tlolawfirm.com
jvanderhorst@tlolawfirm.com

Daniela B. Abratt
Florida Bar No. 118053
915 Middle River Drive, Suite 309
Fort Lauderdale, FL 33304
Telephone: (954) 703-3418
Facsimile:(954) 400-5415
dabratt@tlolawfirm.com