IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-280-FL

| | |
|---|---|
| COURTHOUSE NEWS SERVICE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RYAN BOYCE in his official capacity as ) <br> Director of the North Carolina ) <br> Administrative Office of the Courts; ) <br> MICHELLE BALL in her official capacity ) <br> as Clerk of Superior Court of Johnston ) <br> County; RENEE WHITTENTON in her ) <br> official capacity as Clerk of Superior Court ) <br> of Harnett County; and BLAIR ) <br> WILLIAMS, in his official capacity as ) <br> Clerk of Superior Court of Wake County, ) <br> ) <br> Defendants. ) | ORDER |

This matter is before the court upon defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 28). The motion has been briefed fully and the issues raised are ripe for ruling. For the following reasons, the motion is denied.

**STATEMENT OF THE CASE**

Plaintiff commenced this action May 25, 2023, asserting a violation of its First Amendment rights, pursuant to 42 U.S.C. § 1983, based upon an alleged denial of contemporaneous access to new civil complaints upon their receipt for filing in superior courts of Johnston, Harnett, and Wake counties, in North Carolina. Defendants include the clerks of each such court and the director of the North Carolina Administrative Office of the Courts. Plaintiff seeks declaratory judgment that

defendants' policies and practices of denying access to complaints until after administrative processing are unconstitutional, a permanent injunction prohibiting defendants from continuing such policies and practices, as well as an award of costs and fees.

Defendants filed the instant motion seeking dismissal of the complaint for failure to state a claim upon which relief can be granted, relying upon four Wake County superior court files. Plaintiff responded in opposition and defendants replied. In the meantime, the court stayed scheduling conference activities pending decision on the instant motion, and the court overruled plaintiff's objection to such stay September 12, 2023.

## STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff "is a nationwide news media outlet that, among other things, reports on newsworthy civil filings throughout our nation's state and federal court systems." (Compl. ¶1). The North Carolina Administrative Office of the Courts "oversees and maintains the recently implemented statewide e-filing and case management system, for which rollout has begun across North Carolina's state courts." (Id. ¶ 5). "The rollout began with four Clerks of Court, including the three sued here, who are the first in North Carolina to implement the new e-filing system." (Id.). "On February 13, 2023, the Superior Courts in Wake, Johnston, Harnett, and Lee counties launched their mandatory e-filing programs," and all 100 counties in North Carolina are expected to go live with e-filing by the end of 2024. (Id. ¶ 6). "E-filings are made through a single online site that is managed and maintained by [the North Carolina Administrative Office of the Courts] known as eFile North Carolina." (Id. ¶ 7).

"eFile North Carolina runs on a software platform called eFile & Serve." (Id. ¶ 8). In June

2

2019, North Carolina Administrative Office of the Courts "contracted with Tyler Technologies, Inc. ("Tyler") to license a suite of software applications including eFile & Serve." (Id.).

Defendants follow a "no-access-before-processing" policy, "which keeps the existence of new lawsuits secret until they choose to disclose them." (Id. ¶ 14). "As a result of this policy, [d]efendants withhold e-filed civil complaints from the press and public until after they have been 'processed' by staff, effectively sealing them during processing, resulting in delayed access." (Id. ¶ 15). "That system is not only for e-filing court documents but is also the only mechanism for public access to court records in e-filing counties." (Id. ¶ 18). "Access is withheld until after administrative processing occurs at the county level." (Id.).

"This 'no-access-before-processing' policy will likely only spread as e-filing becomes mandatory across North Carolina." (Id. ¶ 15). "Since implementation of eFile North Carolina, [plaintiff] has experienced substantial and continuous delays in obtaining access to newly e-filed civil complaints, with about half withheld between one to three days — or more." (Id. ¶ 16). "Defendants continue to withhold new efiled complaints past the point of filing until they have been processed, resulting in substantial and ongoing access delays." (Id. ¶ 42). Plaintiff cites four cases as examples of cases "of interest to local readers of local publications centered on local news" that "were in effect sealed the day they were filed":

> (1) the producer of a local politics show Front Row, which allegedly was not renewed for "slipping farther and farther to the Right," sued PBS North Carolina under the state's public records law seeking documents involving the show; (2) parents filed a wrongful death action against the Greater Raleigh Merchants Association because a driver in their holiday parade lost control of his truck and killed their 11-year-old daughter; (3) a Raleigh resident filed a class action on behalf of current and former employees against Pepsi Bottling Ventures over a data breach; and (4) a fraud action was filed against a Wyoming business called Dragonfly Alliance for inducing plaintiff to invest $200,000.00 in a scheme involving a new "plasma technology" process to extract gold quickly so plaintiff could obtain 400 ounces of gold bars at extremely low cost.

3

(Id. ¶ 43).

Defendants allegedly have available to them three alternative methods for processing newly-filed complaints. First, Tyler offers a "Press Review Tool" that "permits the press and public merely to view complaints in the [E-File Manager] after they have been received from the filer." (Id. ¶ 9). "Clerks perform their work through a similar application, called the Clerk Review Queue," through which "clerks review a copy of each complaint held in the [E-File Manager], perform a series of administrative steps called 'processing,' and add it to the case management system (the docket), as their schedules permit." (Id.). The Press Review Tool "works very much like the traditional box on the clerk's intake counter that historically held new paper-filed complaints for public view." (Id. ¶ 10; see also id. ¶ 2 ("There was a time . . . when you took a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately.")).

Second, "Tyler also offers 'Auto-Accept Review' which allows eFile & Serve courts to automatically place new complaints into the public case docket and process them afterwards." (Id. ¶ 12). According to the complaint, "[t]his Court and most federal courts use this type of system." (Id.).

Third, "Tyler also offers an Application Programming Interface ('API') that allows eFile & Serve courts to program software independently to provide press and public access on receipt." (Id.). According to the complaint, twelve states, as well as federal courts, "provide traditional access on receipt, either remotely or at the courthouse, when new e-filed complaints cross the digital counter." (Id. ¶ 13). "Defendants could use one of the alternatives offered by its vendor as a means of providing access to new complaints filed through eFile North Carolina." (Id. ¶ 14).

According to the complaint, "E-filing makes it even easier for courts to provide contemporaneous access to new complaints" compared to "paper civil complaints [available] on their receipt." (Id. ¶¶ 54-55). "Instead of basic intake work being done by clerks at an intake counter, that work is now done by filers through the e-filing software used to enter case information and whatever minimum submission requirements the court specifies before submitting their e-filings to the court." (Id. ¶ 55). "Based on the case designation supplied by the filer, the e-filing software can sort new complaints and automatically make them available to the press and public contemporaneously upon their receipt by the court." (Id.).

"The vast majority of federal courts and many state courts configure their e-filing and case management systems to automatically allow access to civil complaints upon their receipt by the court." (Id. ¶ 56). "The systems that provide this access have been developed by at least ten different private and government software creators." (Id.). "These systems share one critical attribute: they provide access on receipt," and "[c]lerks conduct administrative tasks afterwards, as their schedules permit." (Id.).

Plaintiff "does not seek to review or report on the small number of new civil complaints that are statutorily confidential or accompanied by a motion to seal for a judicial determination of whether the complaint should be confidential." (Id. ¶ 36). "Such complaints are screened from public access by the e-File & Serve software." (Id.).

**COURT'S DISCUSSION**

A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

5

"Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[1]

B.  Analysis

Defendants argue that the instant case must be dismissed under the First Amendment standard for access to newly filed civil complaints articulated in Courthouse News Serv. v. Schaefer, 2 F.4th 318 (4th Cir. 2021). The court disagrees. To address the issues raised by defendants' motion, the court first provides an overview of Schaefer, followed by application of the standard articulated therein to the allegations in the complaint.

   1.  Schaefer

The United States Court of Appeals for the Fourth Circuit in Schaefer addressed First Amendment issues similar to those raised in this case. There, the same plaintiff as here filed suit against county court clerks in Virginia, seeking "declaratory and injunctive relief, alleging that between January and June of 2018, the [defendant clerks] unnecessarily delayed access to newly filed civil complaints in violation of the First Amendment."  2 F.4th at 322.

"After resolving preliminary motions, the district court conducted a bench trial," upon which the district court granted a declaratory judgment but denied injunctive relief. Id. The district court "held that the First Amendment guarantees the press and the public a contemporaneous right

---

[1] Throughout this order, internal quotation marks and citations are omitted from case citations unless otherwise specified.

of access to newly filed civil complaints, which requires courts to make complaints available as soon as practicable." Id. "The district court then carefully applied this standard to the facts in this case and concluded that the Clerks had not provided sufficiently prompt access to the requested documents." Id.

Findings at bench trial included that, in one county, "22% of the complaints were not available until two or more court days after filing," and in another the percentage was "41.5%". Id. After plaintiff filed suit, the defendants "significantly improved access to documents in their courts without hiring any new employees or changing employee or court hours." Id. at 322-323. For example, one court "made at least 88.1% of the complaints available on the day of filing and approximately 96.5% of complaints were available within one day of filing." Id. at 323. "In light of these facts, the district court held that in order to satisfy the First Amendment's access requirement, the Clerks must make newly filed civil complaints available on the same day of filing when practicable, and where not practicable by the end of the next court day." Id. "Given that both Clerks had fallen far short of this standard without any justification for the delays, the court concluded that they had denied [the plaintiff's] First Amendment right of access." Id.

In affirming the district court's declaratory judgment, the Fourth Circuit emphasized "the immediate consequences precipitated by filing a complaint, consequences that the public must promptly understand if it is to help improve the quality of the judicial system by subjecting it to the cleansing effects of exposure and public accountability." Id. at 327. "The press and public thus have an important interest in reasonably contemporaneous access to civil complaints." Id. at 328. As such "a qualified First Amendment right of public access attaches to" a complaint upon its filing. Id. at 326.

7

In assessing whether this First Amendment right has been infringed, the Fourth Circuit noted, "[o]rdinarily, we apply strict scrutiny to examine an asserted infringement of a First Amendment right of access." Id. at 328. However, "limitations on the right of access that resemble 'time, place, and manner' restrictions on protected speech will not be subjected to such strict scrutiny." Id. In Schaefer, the Fourth Circuit held that the clerk's practices there "resemble time, place, and manner restrictions, so we apply more relaxed scrutiny," requiring "that delays in access be content-neutral, narrowly tailored and necessary to preserve the court's important interest in the fair and orderly administration of justice." Id.

Referring to the circumstances of the newly-filed complaints in Schaefer, the Fourth Circuit affirmed the district court's findings that "'contemporaneous' in this context means the same day on which the complaint is filed, insofar as is practicable; and when not practicable, on the next court date — excepting inconsequential deviations and extraordinary circumstances which may, without violating the constitution, delay access." Id. "This flexible standard does not require perfect or instantaneous access." Id. "Rather, it provides courts with some leeway where same-day access would be impracticable, and fully exempts inconsequential delays and those caused by extraordinary circumstances." Id. This reflects the recognition that "the Constitution does not require the impossible," Id., but it does require "courts to make newly filed civil complaints available as expeditiously as possible." Id. at 329.

Applying this standard, the Fourth Circuit noted that "[f]rom [the] evidence, the district court concluded that it was both possible and practicable to provide same-day access to most newly filed civil complaints." Id. at 329. "[A]lthough the Clerks put forth a variety of possible explanations as to why their delays prior to the filing of this action might have been necessary or unavoidable, they failed to offer facts establishing that any of these explanations did actually cause

8

delays." Id. "[T]he Clerks offered no evidence that . . . emergencies caused the delays, and argument unsupported by the evidence will not suffice to carry the government's burden." Id.

2. Application

Here, contrary to defendants' argument, plaintiff has stated a claim under the First Amendment standard articulated in Schaefer. Plaintiff alleges that defendants follow a "no-access-before-processing" policy, "which keeps the existence of new lawsuits secret until they choose to disclose them." (Id. ¶ 14). "As a result of this policy, [d]efendants withhold e-filed civil complaints from the press and public until after they have been 'processed' by staff, effectively sealing them during processing, resulting in delayed access." (Id. ¶ 15). "Since implementation of eFile North Carolina, [plaintiff] has experienced substantial and continuous delays in obtaining access to newly e-filed civil complaints, with about half withheld between one to three days — or more." (Id. ¶ 16). "Defendants continue to withhold new efiled complaints past the point of filing until they have been processed, resulting in substantial and ongoing access delays." (Id. ¶ 42). These allegations provide a basis for attachment of the First Amendment right upon filing of complaints, and they trigger scrutiny of the practical reasons for requiring processing prior to allowing access to such complaints. Schaefer, 2 F.4th at 328.

Additional allegations in the complaint create a plausible inference that the delays involved are not "narrowly tailored and necessary to preserve the court's important interest in the fair and orderly administration of justice," and that defendants have not made "newly filed civil complaints available as expeditiously as possible." Schaefer, 2 F.4th at 329 (emphasis added). In particular, plaintiff alleges three alternative methods for providing access to newly-filed complaints upon their filing, including methods employed by other state and federal courts. (Compl. ¶¶ 9-14). Plaintiff also alleges that "E-filing makes it even easier for courts to provide contemporaneous

9

access to new complaints" compared to "paper civil complaints [available] on their receipt."  (Id. ¶¶ 54-55).  Given that these alleged alternatives are all within the range of possibility, these allegations permit an inference that it is "both possible and practicable" to provide access to newly-filed complaints upon their filing, or at least more expeditiously than currently allowed.  Schaefer, 2 F.4th at 329.  Moreover, there are no allegations in the complaint regarding asserted practical reasons why such alternatives will not work under the context of the allegations in the complaint.  Evaluation of such practical considerations thus must await further development of the record at a later juncture of this case.

Defendants suggest that plaintiff has foreclosed its own claim because each of the four examples of alleged cases "of interest to local readers," (compl. ¶ 43), involve a complaint that was made available for access within at least the next court date after filing.  As such, defendants argue, plaintiff has not stated a claim under the Schaefer standard because there is no factual basis upon which to infer that defendants have exceeded the "next court date" time frame applied by the court in Schaefer.  2 F.4th at 328.  This argument is unavailing on multiple levels.

As an initial matter, this argument misreads the standard in Schaefer.  There, the court did not, as defendants suggest, articulate a safe harbor by which any court in the circuit, under any circumstances, could satisfy the First Amendment solely by making complaints available "on the next court date" after filing.  2 F.4th at 328.  Rather, the court affirmed the district court's declaratory judgment findings, including the time periods articulated in that case, based upon "[e]vidence produced at trial," which included consideration of what "was both possible and practicable" for the clerks to provide under the circumstances then presented.  Id. at 329 (emphasis added).

In addition, the First Amendment standard articulated in Schaefer does not depend upon a specific time frame, but rather is dependent upon "provid[ing] courts with some leeway where same-day access would be impracticable," and in all cases "requires courts to make newly filed civil complaints available as expeditiously as possible." Id. at 328-329 (emphasis added). This necessitates consideration of what, in fact, is "impractical" and "possible" in any given case. Id. Here, for example, plaintiff alleges that "E-filing makes it even easier for courts to provide contemporaneous access" than with paper complaints (compl. ¶ 55), which were the subject of analysis in Schaefer. See 2 F.4th at 329; Courthouse News Serv. v. Schaefer, 440 F. Supp. 3d 532, 540 (E.D. Va. 2020) (district court opinion, noting "[a] new civil complaint filed in paper at the Prince William Circuit Court goes through several stages before it can be viewed on the public access terminals"). As such, applying the "next court date" standard used by the district court in Schaefer would not meet, under presently alleged facts, the First Amendment requirement for "mak[ing] newly filed civil complaints available as expeditiously as possible." Id. at 329.

Moreover, the four case files that defendants attach to their motion do not in themselves demonstrate that defendants made the newly filed civil complaints available as expeditiously as possible. In the first case, according to defendants, the complaint was filed Friday, March 20, 2023 at 4:42 p.m, and it was made available Saturday, March 21, 2023 at 11:31 a.m.[2] (Defs' Mem. (DE 29 at 14-15; see, e.g., Defs' Ex. DE 29-1 at 3-5).[3] In the second case, it was filed Friday, April 14, 2023, at 5:17 p.m., and made available Monday April 17, 2023, at 3:39 p.m. (Defs' Mem.

---

[2]     The court accepts, for purposes of evaluating the premises of defendants' instant argument, that the complaint was made available at the date and time it shows as being "created" in the "case summary" page of the case file, as defendants assert in their memorandum. (Defs' Mem. (DE 29) at 15; Defs' Ex. (DE 29-1) at 3). Nevertheless, that is not a fact that has been alleged in the complaint and it is open to further determination at a later juncture in this case.

[3]     Page numbers in citations to documents in the record specify the page number of the document designated by the court's case management / electronic case filing (CM/ECF) system, rather than the page number, if any shown on the face of the underlying document.

11

(DE 29) at 15). In the third, it was filed Tuesday, March 7, 2023, at 12:25 p.m., and made available Wednesday, March 8, 2023, at 8:22 a.m. (Id. at 16). In the fourth, it was filed Friday, May 5, 2023 at 2:54 p.m. and made available Monday, May 8, 2023, at 9:11 a.m. (Id.). Where the first case was made available on a Saturday, this gives rise to an inference that it was possible and practicable for the clerk to make available the complaint in the fourth case also on a Saturday, but it did not do so. As such, in that case, it is reasonable to infer the court did not make them available "as expeditiously as possible." Schaefer, 2 F.4th at 329. Also lacking are any countervailing facts demonstrating why the complaints in the third and fourth cases filed Tuesday at 12:25 p.m., and Friday at 2:54 p.m., could not have been made available that same day, or why the second complaint could not have been available earlier. Absent such facts, the court cannot conclude from the specific case files alone, as defendants argue, that their policies and practices satisfy First Amendment standards as articulated in Schaefer.

Defendants cite to Courthouse News Serv. v. Harris, No. CV ELH-22-0548, 2022 WL 17850125, at *1 (D. Md. Dec. 22, 2022), for the proposition that "[i]t is premature to shift the burden to Defendants to justify 'any' delay resulting from clerical processing," and that "the burden only falls on defendants if the delays fall outside of the contemporaneous standard and even then, defendants only need to satisfy the intermediate scrutiny standard if the delays are 'not inconsequential or caused by extraordinary circumstances.'" (Defs' Reply (DE 37) at 3). Harris, however, is not helpful to defendants at this juncture for multiple reasons.

First, Harris involved the court's consideration of a preliminary injunction motion, upon review of evidence submitted by both parties regarding the time frames required for making complaints available in Maryland county courts. 2022 WL 17850125 at *2. The court's eighty-one page opinion included charts and graphs exhaustively analyzing data regarding actual

12

complaint-availability time frames and reasons for delay. E.g., Id. at *13-14. Second, at the same time as the court denied the plaintiff's motion for preliminary injunction, the court denied the defendants' motion to dismiss the complaint. Id. Third, the evidence accepted by the court in Harris included implementation of new procedures after the complaint was filed showing that one county court made "98.2% of the complaints . . . accessible within 8 business hours and 1 business minute." Id. *8. It was also undisputed that some of the complaints in Harris contained "private or confidential information," thus justifying some delays, which plaintiff here expressly rules out in the complaint. (See Compl. ¶ 36). Because of each of these reasons, separately and together, Harris is instructively distinguishable and further supports denial of the instant motion.

Moreover, defendants read too much into Harris's application of Schaefer to a preliminary injunction determination. Where Harris references a "burden," it does so in the context of a trial: "At a trial, if the evidence shows that a delay falls outside of the constitutionally permissible time frame, the burden would fall on the defendant to show that the delay was inconsequential or caused by extraordinary circumstances." 2022 WL 17850125, at *38. This does not speak to what a plaintiff must allege to state a claim for a First Amendment violation due to delay in access to a complaint. In any event, Harris also is inapposite because it does not discuss allegations, as here, that plaintiff presented alternatives that make possible access to complaints upon filing, thus bearing on Schaefer's requirement that courts must "make newly filed civil complaints available as expeditiously as possible." 2 F.4th at 329.

Defendants cite to Courthouse News Serv. v. New Mexico Admin. Off. of Cts., 53 F.4th 1245, 1250 (10th Cir. 2022), and Courthouse News Serv. v. Planet, 947 F.3d 581, 594 (9th Cir. 2020), for the proposition that "the qualified First Amendment right of contemporaneous access to newly filed civil complaints does not require instantaneous, on-receipt access." (Defs' Mem. at

9).  As an initial matter, the court does not hold herein that defendants are required to obtain instantaneous, on-receipt access.  Rather, the court holds that plaintiff has stated a claim for a First Amendment violation based upon defendants' existing "policies and practices of denying access to complaints until after administrative processing," (Compl. p. 19), where alternatives exist allegedly that are "possible and practicable" to make complaints available more "expeditiously." Schaefer, 2 F.4th at 329.

In any event, the foregoing circuit court cases do not favor dismissal of the instant complaint.  In New Mexico Administrative Office of the Courts, the Tenth Circuit held that the "district court erred in imposing a bright-line, five-business-hour rule that fails to accommodate the state's interests in the fair and orderly administration of its courts," such as "judicial administration interests in extraordinary circumstances," in granting a preliminary injunction in favor of the plaintiff.  53 F.4th at 1274.  The case is thus inapposite because it involved the review of a preliminary injunction, which followed evidence regarding the specific electronic-filing system used by the courts in that case.  Id. at 1252-1253.  In addition, the district court there expressly addressed, but did not dismiss as a matter of law as defendants here request, a claim by plaintiff for "immediate, pre-processing access." Id. at 1254.  Also lacking was any discussion of "possible and practicable" alternatives, such as those alleged in the instant case.  Schaefer, 2 F.4th at 329; see New Mexico Admin Off. of Cts., 53 F.4th at 1274 n.13 (noting that the plaintiff's argument regarding "the availability of less restrictive alternatives" was not within the scope of the appeal and "not properly before this court").

The reasoning in Planet, similarly, does not compel dismissal of the instant complaint. While the court rejected the plaintiff's argument that the First Amendment requires "instantaneous public access to court filings," the court also held that the defendant county's "no-access-before-

14

process policy bears no real relationship to the County's legitimate administrative concerns." 947 F.3d at 596-97. The court thus struck down as unconstitutional the defendant county's "no-access-before-process policy," Id. at 600, which is the same relief sought by plaintiff in the instant case. (See compl. p. 19). Accordingly, defendants' argument based upon Planet is unavailing.

Defendants also fault plaintiff for bringing suit "in an attempt to pressure [North Carolina Administrative Office of the Courts] to purchase additional software programs" purportedly "that best fit [plaintiff's] business needs." (Defs' Reply (DE 37) at 1, 4; see also Defs' Mem. (DE 29) at 5-6). Such a specific motive, however, is neither alleged in the complaint nor relevant to the evaluation of plaintiff's claims. The First Amendment standards that plaintiff must meet "do not rest on any consideration particular to Courthouse News's status as a media organization." Schaefer, 2 F.4th at 326 n. 5. Moreover, plaintiff does not request adoption of a particular form of software in its prayer for relief, but rather a declaration that existing "policies and practices of denying access to complaints until after administrative processing[] are unconstitutional," and an injunction prohibiting continuing such practices. (Compl. pp. 19-20). It remains for adjudication at a later date whether such a declaration and injunction is warranted under the circumstances of this case.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 28) is DENIED. In accordance with Rule 12(a)(4), defendants shall file a responsive pleading within 14 days of the date of this order.

SO ORDERED, this the 3rd day of November, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge