IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>                      Plaintiff,<br><br>v.<br><br>RYAN BOYCE, in his official capacity as Director of the North Carolina Administrative Office of the Courts; MICHELLE BALL, in her official capacity as Clerk of Superior Court of Johnston County; RENEE WHITTENTON, in her official capacity as Clerk of Superior Court of Harnett County; and CLAUDIA CROOM, in her official capacity as Clerk of Superior Court of Wake County,<br><br>                      Defendants. | Case No.: 5:23-cv00280-FL<br><br>**COURTHOUSE NEWS SERVICE'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

REPLY MEMORANDUM OF LAW ........................................................................................ 1

    I.   ARGUMENT ................................................................................................................. 2

        A.  North Carolina State Courts are Not Exempt from Historic Nationwide Constitutional Precedent .............................................................................................. 2

        B.  CNS has Consistently Sought Compliance with *Schaefer's* Requirements ..................... 2

        C.  Defendants Seek a Standardless Application of *Schaefer* and Ignore its Contextual Demands ........................................................................................................................ 4

        D.  Defendants Overstate *Smith's* Application and Their PII "Duties" ............................... 6

        E.  Defendants Cannot Escape their First Amendment Violations at the Time this Lawsuit was Filed .................................................................................................................. 8

        F.  This Case is Not Moot and No Bar Exists to Providing Declaratory or Potential Injunctive Relief ............................................................................................................ 9

        G.  Defendants Manipulate CNS' Statement of Facts to Manufacture Non-Material Disputes ...................................................................................................................... 10

    II. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986), ................................................................................................... 10

*Courthouse News Serv. v. Planet*,
  947 F.3d 581 (9th Cir. 2020) ........................................................................................ 8

*Courthouse News Service v. Schaefer*,
  2 F.4th 318 (4th Cir. 2021) .................................................................................. *passim*

*Courthouse News Service v. Schaefer*,
  440 F. Supp. 3d 532 (E.D. Va. 2020) .................................................................. 3, 5, 7

*Courthouse News Service v. Schaefer*,
  429 F. Supp. 3d 196 (E.D. Va. 2019) ......................................................................... 10

*Courthouse News Service v. Smith*,
  126 F.4th 899 (4th Cir. 2025) .............................................................................. 6, 7, 8

*Dash v. Mayweather*,
  731 F.3d 303 (4th Cir. 2013) ...................................................................................... 10

*Peterson v. Air Line Pilots Ass'n, Int'l*,
  759 F.2d 1161 (4th Cir. 1985) .................................................................................... 10

*Porter v. Clarke*,
  852 F.3d 358 (4th Cir. 2017) ........................................................................................ 9

*Press-Enterprise Co. v. Sup. Ct. of Cal. For the Cnty. of Riverside*,
  478 U.S. 1 (1986) ......................................................................................................... 6

*Ricci v. DeStefano*,
  557 U.S. 557 (2009) ................................................................................................... 10

# REPLY MEMORANDUM OF LAW

Pursuant to this Court's June 26, 2025, order (ECF 90), Plaintiff Courthouse News Service ("CNS") files this reply to Defendants' Opposition to CNS' Motion for Summary Judgment (ECF 86, "Opposition") in further support of its Motion for Summary Judgment (ECF 77, "Motion"). This case is ultimately simple. Defendants were withholding access to newly e-filed, non-confidential civil complaints ("Complaints") in violation of the First Amendment. CNS sued to enforce its constitutional rights. Defendants then began providing more timely access to Complaints. CNS now seeks a declaration ensuring Defendants adhere to public access rates that comply with the First Amendment.

But to credit the arguments raised in the Opposition would be to find the North Carolina state court system an anomaly among its sister courts nationwide with unique challenges and duties requiring special dispensation and application of an amorphous, self-serving exception to the First Amendment access standard. The reality is much more banal: Defendants are fundamentally opposed to anybody—including this Court—having any say about how they interpret their First Amendment obligations. At *no* relevant time, according to them, did they violate the First Amendment and any future compliance matters should be of purely internal concern. But the First Amendment, obviously, applies to North Carolina.

The undisputed record shows CNS' attempts to resolve its concerns were ignored for years. It was only after CNS was forced to sue that public access rates to Complaints eventually improved. The facts also show that, despite e-filing technologies that permit clerk "processing" and public access to occur concurrently, Defendants cling to a "no-access-before processing" policy. And while the Defendants trumpet a present ability to provide *Schaefer*-compliant access, they are selective in embracing the Fourth Circuit's *Schaefer* mandates. Mainly, they reject any Court determination of what minimally compliant access under *Schaefer* actually means. Why? They effectively want no standard imposed at all. The Opposition portrays *Schaefer* as the standard to be met—except when Defendants unilaterally determine they cannot. Defendants also bristle at another portion of *Schaefer* CNS requests be imposed here: the District Court's requiring brief compliance monitoring and reserving on imposition of an injunction should access rates drop. Then, in further contravention of *Schaefer* and after two years of litigation, Defendants

now argue this Court should refrain from any judicial action because the matter is somehow moot, requires abstention, and is unsupported by the Declaratory Judgment Act. Defendants' arguments are addressed below as sequentially raised in the Opposition.

## I. ARGUMENT

**A.     *North Carolina State Courts are Not Exempt from Historic Nationwide Constitutional Precedent***

From the outset, Defendants portray themselves and the North Carolina state court system as separatists. They begin by suggesting CNS cannot prove it ever historically received "on-receipt" access to newly filed paper complaints in North Carolina, and that this undermines constitutional compliance in the e-filing world. *See* Opposition at 2. This misses the mark. While seeming to relish in a history where North Carolina was possibly out of step with the nationwide tradition of access (*see* CNS SOF ¶¶ 9-12)[1], this argument does nothing to undermine that nationwide tradition and corresponding First Amendment ramifications. Defendants' suggestion the nationwide standard does not apply to North Carolina courts—because they violated it in the past—is truly remarkable. *See Courthouse News Service v. Schaefer*, 2 F.4th 318, 322-23 (4th Cir. 2021) ("*Schaefer*") (noting evidence of a "nationwide tradition and practice" of access to newly filed civil complaints).

**B.     *CNS has Consistently Sought Compliance with Schaefer's Requirements***

Defendants suggest CNS has "shifted course" in this litigation and now seeks relief wholly distinct than what was originally plead. *See* Opposition at 4. Not so. What has occurred here bears a striking resemblance to *Schaefer*. There, access rates to paper complaints improved only after CNS sued. *See Schaefer*, 2 F.4th at 322-23. The evidence in this case shows that complying with *Schaefer* (which Defendants were not doing at the time this suit was filed) became a priority (or litigation strategy) with emphasis on continuing a "no-access-before-processing" policy while also meeting a *Schaefer*-based 90%

---

[1] CNS refers to its Statement of Material Facts (ECF 78) as "CNS SOF," Defendants' response (ECF 87 at 1-40) as "Resp. SOF," and Defendants' Statement of Additional Material Facts (ECF 87 at 41-106) as "Def. SOAF". Defendants attempt to create a dispute here by arguing that the facts presented do not show such access in North Carolina. *See* Resp. SOF at ¶¶ 9-12. But CNS' facts are about the *nationwide* tradition, not North Carolina, and Defendants fail to produce any actual evidence to the contrary.

same-day access threshold. *See* CNS SOF ¶ 54 (defendant counties provided same-day access to Complaints at an average rate of 50% before this lawsuit was filed),[2] ¶¶ 66-69, 72 (advising of the need to meet 90% access rates to prevent the court from imposing the press review queue); ECF 80-22 at 3; and ECF 80-23 at 4 (amendments to eRRK 1.5).

At this lawsuit's May 2023 inception when access rates were woefully deficient and CNS had no confidence in meaningful change, it sought: (1) declaratory relief that Defendants' "no-access-before-processing" policies and practices resulted in unconstitutional delays falling short of required "contemporaneous access;" (2) injunctive relief prohibiting any policies and practices denying CNS "contemporaneous" access; and (3) fees and costs. *See* Compl. at 19-20 (ECF 1). While Defendants dispute the exact methodology used to calculate same-day access rates in an e-filing environment (a red herring discussed below), they cannot dispute that several months following this lawsuit's filing access rates to Complaints significantly improved, demonstrating it is practicable to meet *Schaefer*-compliant standards.

Two years later, CNS faces different facts because Defendants' behavior has changed. Defendants appreciated the First Amendment problems they created and sped up access rates. This is virtually identical to what happened in *Schaefer*, albeit there in a paper filing environment. The Fourth Circuit affirmed that the District Court's declaratory ruling that the defendants' earlier practices violated the First Amendment, their post-suit paper access rates of about 90% satisfied the First Amendment, rates cannot dip absent extraordinary circumstances, the Court would monitor for compliance six months out, and fees were appropriate. *See Schaefer*, 2 F.4th at 322-23, 329; *Courthouse News Service v. Schaefer*, 440 F. Supp. 3d 532, 562-63 (E.D. Va. 2020). Further, the relief sought in CNS' summary judgment motion reflects its

---

[2] Even the charts proffered by Defendants (with their more generous calculation standards) show pre-suit access rates far below the 90% mark and generally in line with CNS' calculations. *See* Def. SOAF ¶ 150.

3
Case 5:23-cv-00280-FL-RJ    Document 95    Filed 07/22/25    Page 6 of 14

pleaded relief in this shifting landscape. Even crediting Defendants' argument, the Court must conform relief to present circumstances, as implicitly recognized in *Schaefer*.

C.  ***Defendants Seek a Standardless Application of Schaefer and Ignore its Contextual Demands***

Defendants go on next to recognize *Schaefer* applies but urge a construction rendering it toothless. *See* Opposition at 5-8. CNS does not dispute, as Defendants impress, that *Schaefer* concluded that newly filed paper complaints must be made public as "expeditiously as possible" and did not explicitly require "instantaneous" access. The standard imposed once a right of access attaches[3] is that of "contemporaneous" access, which *Schaefer* made clear is a contextual analysis. *See Schaefer*, 2 F.4th at 328. In the paper world where filings were done in-person at the courthouse, "contemporaneous" meant "'the same day on which the complaint is filed, insofar as is practicable;' and when not practicable, on the next court date' – excepting inconsequential deviations and extraordinary circumstances…" *Id.* The Court found that Clerks, post-litigation, provided "almost 90%" same-day access to newly filed paper complaints. Applying that precedent to the present e-filing context, the data shows it is possible to make Complaints available more "expeditiously." Even CNS' "calendar-day" calculations[4] (*see* ECF 79, "MOL" at 6-7) show that over the last thirteen (13) months the Defendants have all averaged over 90% same-day access to Complaints: Harnett County 94%, Johnson County 92%, and Wake County 92%.

Defendants then posit a laundry list of hypothetical reasons access could slow,[5] insisting this Court cannot recognize any minimum same-day standard under *Schaefer*—in spite of the actual evidence and

---

[3] Defendants concede that the "First Amendment right of contemporaneous access to newly filed civil complaints attaches when the system receives the complaint." Opposition at 5, n. 11.

[4] Defendants take issue with CNS' calculations for numerous reasons, including the calendar-day methodology and for the inclusion of certain additional cases. *See* Opposition at 10-11. The former criticism is of no legal significance as even assuming this methodology is "stricter" than the one used by Defendants which replicates the paper-filing world where courthouse doors must literally be open, it still shows an ability to provide same-day access on average at above 90%. As to the latter criticism, it is factually insignificant and does not materially impact any of CNS' calculations. *See* CNS' Reply Statement of Additional Facts [ECF 92] ("Reply SOF") at ¶ 2.

[5] These include: (1) workload and staffing fluctuations; (2) technology interruptions; (3) "other critical duties" including those relating to mental health matters, domestic violence matters, and guardianships; (4) "essential support for criminal court, estate administration, foreclosures, and adoptions;" and (5) "day-to-day technical and operational challenges" like "software issues, script errors, serve outages," and system delays. *See* Opposition at 6-7.

their concession that they can meet one (*see* Opposition at 7). *Schaefer* already handles these issues. The Defendant Clerks—like all clerks—support a court system and have other daily duties. So did the clerks in *Schaefer,* yet a standard was imposed. Second, *Schaefer* addresses "extraordinary circumstances" that could result in temporary, limited deviations from First Amendment compliance. *See Schaefer*, 440 F. Supp. 3d at 562. If unexpected power outages or software malfunctions temporarily render it impossible to provide access, *Schaefer* resolves that problem. Defendants would read *Schaefer* to credit routine administrative ebb and flow and the duties of their offices generally as "extraordinary" reasons to ignore minimum First Amendment compliance. But when everything can be "extraordinary," nothing is.

The litany of circumstances Defendants claim support a "no minimum floor" *Schaefer* interpretation largely results from their own insistence on "processing" first. They cannot have it both ways. They cannot ignore *Schaefer*'s "as expeditiously as possible requirement" by eschewing technical solutions adopted by this and other courts, such as a press review queue[6] or auto-accept[7] functionality, while arguing they can process first tied to old paper filing hours at any rate they see fit on a given day. Defendants have chosen to put access behind processing, and CNS seeks a declaration that 90% same-day access—absent truly extraordinary circumstances—is the minimum that the First Amendment requires. To be sure, this minimum is not derived out of thin air. It: (1) falls squarely within *Schaefer*, which Defendants concede,[8] (2) is a benchmark Defendants admit they can meet, (3) was the floor established in North Carolina's short-lived eCourts Rule of Recordkeeping 1.5 to avoid imposition of a press review queue terminal (*see* ECF

---

[6] Defendants claim CNS seeks special treatment over the public by asserting, without evidentiary support, that press review queues only benefit credentialed media. *See* Opposition at 25. But as the record demonstrates, the term is a misnomer; access is *not* limited to journalists. *See* ECF 80-5 at 16, ¶ 50. Rather, courts determine what user accounts have access to the press review queue, and anyone can apply for access. *See* Derrick Depo. at 126:7 – 129:3.
[7] Since CNS filed its Motion, the District of Columbia Superior Court which, like North Carolina's, runs on Tyler Technology Inc.'s ("Tyler's") e-filing platform, advised it will implement an "auto-accept" option to resolve litigation there. *See* Reply SOF at ¶ 1.
[8] *See* ECF 80-24 at 53, ln. 726-727 (General Counsel Corinne Lusic stating, "we do need to show that we are being supportive of making sure that filings are available to the public within the timeframes that are supported by the caseload [sic]. And 90% is right, right in there."); *see also* ECF 80-8 at 181 (video at timestamp 03:08:26.937 – 03:09:18.471) (same).

80-23 at 5; 80-24 at 53, ln. 726-727), and (4) is the current "reference" point for *all* North Carolina Clerks to gauge First Amendment compliance (*see* ECF 80-21 at 88:11-18, 90:14-19). Defendant NCAOC offers assistance to those counties that consistently fall below this benchmark. *See id.* at 88:19-25, 90:2-13. Under the current circumstances, this Court should question why Defendants so vehemently resist a *Schaefer* declaration. A declaration will bring *Schaefer* into sharper relief in the e-filing context and insulate against Defendants reverting to pre-litigation access rates or exercising unbound "discretion" to self-declare circumstances "extraordinary," undermining *Schaefer*.

D.   ***Defendants Overstate Smith's Application and Their PII "Duties"***

Defendants' reliance on *Courthouse News Service v. Smith*, 126 F.4th 899 (4th Cir. 2025) ("*Smith*") is misplaced in at least two ways. First, Defendants cite *Smith* for the proposition that the First Amendment does not require online access to court records. *See* Opposition at 11. They in turn argue that the absence of any affirmative recognition in *Smith* that online records access availability heightened or created new First Amendment rights means that this Court should essentially decline to recognize any qualitative difference between paper and e-filing courts. *See* Opposition at 11-12. This all misses the point.

*Smith* did not involve access *delays*, be they online or at the physical courthouse. *See Smith*, 126 F.4th at 907 ("Courthouse News does not claim any unconstitutional time lag or delay"). *Smith* was about whether CNS had the same right to obtain online access to court records like Virginia-licensed attorneys. In *Smith*, court records were publicly available at a courthouse review terminal "almost immediately" upon clerk scanning and before the same record was available online. *See id.* at 905. In North Carolina, online access is made available to everyone, and it is the *delays* caused by allowing complaints to languish in an electronic clerk review queue that must be justified under *Press-Enterprise II* and *Schaefer*. *Smith* in no way diminishes *Schaefer'*s access requirements. Nor does it prohibit technological access means. And the idea that transitioning to e-filing would be disincentivized were this Court to declare any such standard (*see* Opposition at 12) is belied by the wealth of courts that have done just the opposite, embracing e-filing and

6

Case 5:23-cv-00280-FL-RJ     Document 95     Filed 07/22/25     Page 9 of 14

the attendant technological capabilities allowing for concurrent "processing" and public access. Again, it is North Carolina that stands as the outlier.[9]

Second, Defendants overstate *Smith's* application to this case in terms of personally identifying information ("PII"). CNS does not take the position that PII is of no concern whatsoever. Despite Defendants' emphasis on that apparent concession (*see* Opposition at 13), CNS has never sought access to civil filings that are categorically confidential (*see* ECF 1 at ¶ 36). What CNS questions are the additional measures Defendants insist they must take via manual review to allegedly hunt for PII in every filing, as a justification for delaying access. Multiple precautions already exist to address this concern. *Smith* does not support no standards for First Amendment access because of PII concerns.

In *Smith*, there was a Virginia state law specifically forbidding clerks who provide online access to court records from posting certain information such as signatures, social security numbers, and financial account numbers. *See Smith* at 905. That is how Virginia elected to address PII in online court filings. North Carolina, however, takes a different approach. **North Carolina mandates filer responsibility** to protect PII—a point Judge Morgan specifically found relevant in rejecting the argument that PII concerns outweighed the First Amendment right to contemporary access. *See Schaefer*, 440 F. Supp. 3d at 560; MOL at 25-27. And North Carolina goes to great lengths to make sure filers are aware of their obligations. It also implements redaction software technology for e-filers, and filers must acknowledge their redaction responsibilities before submitting a document. *See* MOL at 25-26. Moreover, North Carolina law only empowers Clerks to redact for PII in very limited circumstances, which do not include a general duty to independently review and redact Complaints upon their receipt. *See* MOL at 27-30. This is all consistent

---

[9] Defendants' attempt to equate the federal PACER system with its own practices is also mistaken. They claim PACER does not make complaints available contemporaneously upon receipt (*see* Resp. SOF at ¶ 20 & Def. SOAF at ¶ 8) citing an exhibit (ECF 88-3 at ¶ 73, Ex. E) to the main PACER website which advises that "newly filed cases will typically appear on this system within 24 hours." However, this notice is for the national case locator index for all federal courts across the country, which updates nightly with new case information. *See* Reply SOF ¶ 3. Complaints are made available virtually immediately on each individual federal court website. *Id.* No 24-hour disclaimer appears on the sites for the individual courts. As shown on the PACER site for this Court, new "filings are immediately entered on the court's electronic docket". *Id.*

with Defendants' own recognition that North Carolina Clerks are "*Not the PII Police*," yet they still urge this Court sanction the opposite. *See* CNS SOF ¶ 122. At bottom, no system to protect PII will be perfect (including one with a proclaimed "few minutes"[10] of manual review as here). The balance between PII and public access in North Carolina has already been struck, and the Clerks cannot be permitted to unilaterally suppress First Amendment rights because they personally believe they must do more than the law requires. *See Courthouse News Serv. v. Planet*, 947 F.3d 581, 591 (9th Cir. 2020) (clerk's "no-access-before-process policy bears no real relationship to the County's legitimate administrative concerns about privacy and confidentiality, accounting protocols, quality control and accuracy, efficient court administration, or the 'integrity' of court records."). *Smith*'s facts were different in multiple, critical aspects. *Schaefer* is the more relevant precedent because it specifically addresses delay issues.

### E. *Defendants Cannot Escape their First Amendment Violations at the Time this Lawsuit was Filed*

As mentioned above, Defendants urge this Court to sanction a liberal view of *Schaefer* that permits nearly any situation resulting in delay to be characterized as an "exceptional circumstance." Consistent with this, they now claim that the transition to e-filing constituted a six-month long "exceptional circumstance" where the First Amendment just didn't apply. *See* Opposition at 18-21. To suggest that these First Amendment access issues caught Defendants by surprise is nonsense. As the evidence shows, CNS made its plea back in 2019, when North Carolina was considering transitioning to a Tyler e-filing system. CNS described how e-filing can cause access delays as complaints "pile up for a day or more in a clerk's computer queue," and offered solutions. *See* ECF 80-5 at 79-81. No action was taken. After the February 2023 transition to e-filing CNS again reached out to the NCAOC and each Clerk Defendant in April 2023, noting access delays were occurring. *See* ECF 80-5 at 83-94. CNS received a response with a vague commitment to "providing public access to court records in a manner that is responsible and compliant with law." *See* ECF 80-5 at 96. CNS wrote one last time in early May 2023 (*see* ECF 80-5 at 98-99) emphasizing

---

[10] The "few minutes" Defendants claim it takes to review a document for PII (*see* Opposition at 15) is misleading. It ignores the fact that access delays occur because of review queue backlogs caused by a human manually reaching every Complaint.

that these issues were raised years ago, welcoming a proposal for a solution. Nothing came, suit was filed in late May 2023, and only then did CNS' concerns eventually get attention.

Defendants declare, "[t]he Constitution does not require perfection on day one." *See* Opposition at 21. But it surely must before day 180, particularly when CNS warned of the potential for access delays *years* before any North Carolina court transitioned to e-filing. The First Amendment is not a standard to be met at one's own pace and placed on the back-burner in the meantime. This argument must be rejected, and this Court should instead, like in *Schaefer*, declare Defendants were violating CNS' First Amendment rights at the time this lawsuit was filed and until the time same-day access rights met at least a 90% threshold.

### F. *This Case is Not Moot and No Bar Exists to Providing Declaratory or Potential Injunctive Relief*

The Opposition's remainder mainly presents argument on why this controversy is moot, this Court should not issue any declaratory relief, and the abstention doctrine precludes any injunctive relief. *See* Opposition at 25-33. All are without merit.

Defendants ignore *Schaefer* regarding mootness. The Fourth Circuit instructed, "While the Clerks' improvements in rates of access are commendable, absent the relief Courthouse News sought, 'nothing bars [them] from reverting' to the allegedly unconstitutional rates of access is the future. *Porter v. Clarke,* 852 F.3d 358, 365 (4th Cir. 2017). The case is thus not moot." *Schaefer*, 2 F.4th at 323-24. Neither is this one.

Next, Defendants urge the Court to abstain broadly. *See* Opposition at 32-33. Abstention was not triggered in *Schaefer*; it is not triggered here. CNS seeks the same type of declaratory relief and limited reporting to prevent backsliding that *Schaefer* sanctioned. *See Schaefer,* 2 F.4th at 324 ("The district court did not abuse its discretion in denying the Clerks' motion to abstain."). Reservation on injunctive relief, which as noted in *Schaefer* was also sanctioned.

Defendants' arguments that this Court should refrain under the Declaratory Judgment Act are also misplaced. Aside from declaratory relief supported by *Schaefer* as a controversy still exists, CNS has brought a Section 1983 claim. Defendants cannot now escape liability under it, or attendant fee liability, by a claimed cessation of the First Amendment right they were violating. Finally, Defendants never raised any of these arguments in this 2023 case either by motion or affirmative defense in their Answer. They are left

9

to be addressed briefly on reply at summary judgment years after suit was filed. These dilatory and prejudicial arguments can properly be ignored for this reason too. *See Courthouse News Serv. v. Schaefer*, 429 F. Supp. 3d 196, 204-05 (E.D. Va. 2019); *Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1164 (4th Cir. 1985). Defendants claim they *never* violated the First Amendment and have been meeting Schaefer standards for two years. There is no justification for such eleventh-hour arguments raised only *in response* to *CNS'* motion.

### G. *Defendants Manipulate CNS' Statement of Facts to Manufacture Non-Material Disputes*

Finally, Defendants submit a response to CNS' SOF to create confusion and doubt where none exists. *See* ECF 87. Many of these "disputes" aren't disputes at all. Defendants present "counter" evidence to statements not made by CNS or provide legal conclusions/argument about facts.

Defendants cannot avoid summary judgment via non-material disputes, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), "create a genuine dispute of fact based on a few stray (and contradictory) statements in the record," *Ricci v. DeStefano*, 557 U.S. 557, 591 (2009), or rely on "conclusory allegations...the building of one inference upon another, or the mere existence of a scintilla of evidence," *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). This is what Defendants have attempted to do.[11]

## II. CONCLUSION

For the additional reasons above, this Court should grant CNS' motion for summary judgment.

## CERTIFICATION

Pursuant to Local Rule 7.2(f)(2)(B) and (3)(B), the undersigned certifies that this memorandum of law complies with the font, page and/or word limits under the Rule.

---

[11] For example, Defendants dispute paragraph 15 of CNS' SOF, stating that courts require filers to enter into the e-filing system information needed to automatically segregate confidential filings. *See* CNS SOF ¶ 15. But Defendants don't actually challenge the veracity of this fact. Rather, they make a legal argument that this entry does not effectively protect confidentiality. *See* Def. Resp. to CNS' SOF ¶ 15. Defendants repeat these tactics, additional examples of which are detailed in the attached **Exhibit A**.

Dated: July 17, 2025                                    Respectfully submitted,

                                                        THOMAS & LoCICERO PL

                                                        */s/ Carol Jean LoCicero*
                                                        Carol Jean LoCicero (FBN 603030)
                                                        Mark R. Caramanica (FBN 110581)
                                                        601 South Boulevard
                                                        Tampa, FL 33606
                                                        Telephone: (813) 984-3060
                                                        Facsimile: (813) 984-3070
                                                        clocicero@tlolawfirm.com
                                                        mcaramanica@tlolawfirm.com
                                                        tgilley@tlolawfirm.com
                                                        jvanderhorst@tlolawfirm.com

                                                        Daniela B. Abratt (FBN 118053)
                                                        915 Middle River Drive, Suite 309
                                                        Fort Lauderdale, FL 33304
                                                        Telephone: (954) 703-3418
                                                        dabratt@tlolawfirm.com

                                                        - and -

                                                        Michael J. Tadych (NC Bar No. 24556)
                                                        mike@smvt.com
                                                        Kathleen O'Malley (NC Bar. No. 51654)
                                                        komalley@smvt.com
                                                        STEVENS MARTIN VAUGHN &
                                                        TADYCH, PLLC
                                                        6300 Creedmoor Road, Suite 170-370
                                                        Raleigh, NC 27612
                                                        Telephone: (919) 582-2300
                                                        Facsimile: (866) 593-7695

                                                        *Counsel for Courthouse News Service*

## CERTIFICATE OF SERVICE

This is to certify that the undersigned this **17th** day of **July, 2025** has caused the foregoing to be electronically filed using the CM/ECF system, which will send notification of such filing to all the counsel of record for the parties who participate in the CM/ECF system.

                                                        */s/ Carol Jean LoCicero*
                                                        Attorney